(78 South. 745)

No. 23010.

CITY OF NEW ORLEANS v. WHITE.

(April 29, 1918.    Rehearing Denied May 27,
1918.)

*(Syllabus by the Court.)*

1. MUNICIPAL CORPORATIONS ⬗111(4)—PAR-
TIAL INVALIDITY — KEEPING DISORDERLY
HOUSE.

The first section of a municipal ordinance
declaring it unlawful to operate a house of pros-
titution or assignation being plain and legal,
the defendant condemned under that section
cannot sustain an objection of illegality to the
whole ordinance on the ground that the other
sections are illegal.

*(Additional Syllabus by Editorial Staff.)*

2. MUNICIPAL CORPORATIONS ⬗594(1)—OR-
DINANCE—MISDEMEANORS.

The law does not require that municipalities
should grade misdemeanors or minor offenses
by ordinances defining and penalizing them.

3. CONSTITUTIONAL LAW ⬗165 — OBLIGA-
TION OF CONTRACT.

An ordinance making it an offense to oper-
ate a house of prostitution and prescribing the
penalty therefor and under which the mayor
may order the occupants to remove does not in
any manner impair the obligation of a contract.

4. CONSTITUTIONAL LAW ⬗104 — VESTED
RIGHTS.

Such ordinance does not divest one prose-
cuted thereunder of any vested rights in the
real property which she owns and occupies.

5. CONSTITUTIONAL LAW ⬗250—DISORDER-
LY CONDUCT ⬗2—EQUAL PROTECTION OF
THE LAWS.

Such ordinance was not harsh, unreasona-
ble, and discriminating, so as to deny the accus-
ed to equal protection of the laws in violation
of the state and federal Constitution.

6. CONSTITUTIONAL LAW ⬗257—DISORDER-
LY CONDUCT ⬗2—"DUE PROCESS OF LAW."

The proceeding by affidavit against the per-
son charged with having committed an offense
is "due process of law."

Appeal from Recorder's Court of New Or-
leans; Louis Burthe, Jr., Recorder.

Lulu White was convicted on affidavits
charging the keeping of a house of prostitu-
tion, and she appeals.    Affirmed.

Louis H. Burns and J. F. Anderson, both
of New Orleans, for appellant.    John J. Reil-

ley, Asst. City Atty., and I. D. Moore, City
Atty., both of New Orleans, for appellee.

SOMMERVILLE, J.    Lulu White was
charged in two separate affidavits, filed in
the Second recorder's court of the city of
New Orleans, with violating section 1 of or-
dinance numbered 4656, C. C. S., relative to
operating a house of prostitution or assig-
nation at the premises 235 North Basin street,
in the city of New Orleans, on December 29,
1917, and January 9, 1918. · The two cases
were consolidated and tried at one time.
She was convicted in both cases and sentenc-
ed, and she has appealed.

It appears from the record that defendant
was also charged under seven other sepa-
rate affidavits with having violated section
3 of the same ordinance, for failing to re-
move from the premises indicated, and of
which she was the owner, after having been
served by the mayor of the city with notices
to remove.

Defendant demurred to the nine affida-
vits just referred to, in which she assailed
the validity and constitutionality of the ordi-
nance, particularly sections 3, 4, 6, and 7,
on the following grounds:

"(a) That the said ordinance does not grade
the misdemeanor or minor offense sought to be
defined by its terms, nor fix a maximum penalty
therefor, in violation of the provisions of the
Constitution of Louisiana.

"(b) That the said ordinance impairs the obli-
gations of contract, and will divest the vested
rights of defendant to her property for other
than public utility, and amounts to a taking of
her property without adequate compensation be-
ing first paid, in violation of the provisions of
the Constitution of Louisiana and article 14 of
the Constitution of the United States.

"(c) That the said ordinance is unreasonable,
harsh, and discriminating, and under pretext of
a due exercise of the police power denies to her
the equal protection of the laws, in violation of
the Constitution of Louisiana and that of the
United States of America.

"(d) That said ordinance and its methods of
execution, as appears from the multifarious
criminal charges pending here in court, de-
prive petitioner of her liberty without due
process of law, and abridges her privileges and
immunities without limitation upon the penal-

ties therefor, in violation of said Constitution of Louisiana and of the United States.

"(e) That said ordinance is ultra vires of the power of the city of New Orleans, and would deprive defendant of her real property without lawful condemnation proceedings.

"(f) That the same, and more particularly sections 3, 4, 6, and 7 thereof, are null and void under article 7 of the Constitution of the United States, in that the defendant is denied the right of trial by jury where the value in controversy, i. e., the right to own, use, and dispose of her own property, consisting of real estate, exceeds the sum of $20, the value thereof being more than $25,000."

The demurrer appears to have been aimed at section 3 of the ordinance, which provides that the mayor may order the occupants of a house of prostitution to remove therefrom. But on the day following the filing of the demurrer the city attorney dismissed the seven affidavits relative to the failure of the defendant to remove from the premises indicated; and they are not involved in these cases now under consideration.

When the cases were called for trial under affidavits numbered 58124 and 58255, made under section 1 of the ordinance, prohibiting the keeping of a house of prostitution or assignation in the city of New Orleans, the prosecuting officer moved to amend said two affidavits so as to strike therefrom the words "immoral house," and to insert in their stead, "a house of assignation or prostitution," the words used in the ordinance, so that the affidavits read, with the exception of the respective dates of the offenses charged, as follows:

"That on Saturday the 29th day of December, 1917, at about 1:15 a. m., on premises 235 North Basin street, within the jurisdiction of this court, one Lulu White did then and there willfully violate Ordinance 4656, C. C. S., relative to keeping a house of assignation and prostitution, all in violation of section 1 of said ordinance."

The amendments of the affidavits were made in open court, in due form, in the presence of the defendant, and without protest or objection on her part. The case was called for trial, and the demurrer, copied above, was taken up and disposed of adversely to defendant.

[2] (a) The first ground of the demurrer, that the ordinance does not grade the misdemeanor, is without merit. The law does not require that municipalities should grade misdemeanors or minor offenses.

[3; 4] (b) The next objection to the ordinance is that it impairs the obligation of a contract and will divest defendant of vested rights in her property for other than for purposes of public utility, and amounts to taking her property without an adequate compensation being first paid.

The affidavits against defendant charge her with having violated a municipal ordinance relative to keeping a house of assignation or prostitution, and that does not in any manner impair the obligation of a contract, or divest her of any vested rights in the real estate which she owns and occupies.

[5] (c) The charge is made that the ordinance is unreasonable, harsh, and discriminating, and that she is thereby denied the equal protection of the laws in violation of the Constitution of the state and the United States. No argument was presented in support of this proposition, and it is without merit.

[6] (d) The next objection is aimed at the ordinance and its method of execution, "as appears from the multifarious criminal charges pending here in court," and that it deprives petitioner of her liberty without due process of law, and abridges her privileges and immunities without limitation upon the penalties therefor.

At the time of the trial, so far as the record discloses, there were but two affidavits pending against this defendant, and charging her in several affidavits, even if they existed, would not deprive her of her liberty without due process of law.

The proceeding by affidavit against a person charged with having committed an of-

fense is due process of law. The point is without merit.

The demurrer was properly overruled.

[1] It was argued in this court that sections 3, 4, 6, and 7 of the ordinance were unconstitutional, illegal, null, and void, and that the nullity of these sections carried with it the nullity of the entire ordinance.

The affidavits under consideration were made against the defendant under section 1 of the ordinance, and not under section 3, 4, or 7. Seven other affidavits were made against her under section 3 of the ordinance, but these affidavits had been dismissed, on motion of the city attorney, several days before the two cases which were tried were called for trial. The defendant is therefore without interest in attacking the constitutionality or validity of sections 3, 4, or 7.

The defendant does not attack the constitutionality or validity of section 1, which provides:

"That it is hereby declared to be unlawful for any person to keep or conduct or maintain or operate a house of prostitution or assignation, used or intended to be used for the purposes of prostitution or assignation, in any part of the city of New Orleans."

But in argument she attacks the constitutionality and legality of section 6 of the ordinance wherein the penalty is provided for violating "any of the provisions of this ordinance."

The argument was made that the section containing the penal clause is illegal, null, and void, because it is not clear; that it is confusing; that it cannot be enforced with reference to the other sections of the ordinance. There is no break between section 1, stated above, and section 6, which is here produced:

"That any person who shall violate any of the provisions of this ordinance shall be punished by the recorder having jurisdiction, for the first offense by a fine of not less than $25.00 and in default of payment by imprisonment not exceeding thirty days, and for the second and each subsequent offense by a fine of $25.00 and imprisonment for thirty days, each day's violation constituting a separate and distinct offense."

Admitting, for the moment, that other sections of the ordinance are illegal, the two sections, 1 and 6, completely define a misdemeanor and provide a penalty for the commission thereof. In the case of State v. Riley, 49 La. Ann. 1617, 22 South. 843, it is said in the syllabus:

"The first section of a municipal ordinance declaring it unlawful for any person to keep a lottery office being plain and legal, the defendant condemned under this section is without right to sustain an objection of illegality of the whole ordinance on the ground that the second section is unconstitutional."

In Cooley's work on Constitutional Limitations (6th Ed.) pp. 211, 213, a reference on page 213 is made to a section of the Criminal Code of Illinois, which provides:

"If any person shall hereafter harbor or secrete any negro, mulatto, or person of color, the same being a slave or servant, owing service or labor to any other persons, whether they reside in this state or in any other state, or territory, or district, within the limits and under the jurisdiction of the United States, or shall in any wise hinder or prevent the lawful owner or owners of such slaves or servants from retaking them in a lawful manner, every person so offending shall be deemed guilty of a misdemeanor, etc., it was held, although the latter portion of the section was void within the decision of Prigg v. Pennsylvania, 16 Pet. 539, 10 L. Ed. 1060, yet that the first portion, being a police regulation for the preservation of order in the state, and important to its well-being, and capable of being enforced without reference to the rest, was not affected by the invalidity of the rest."

The learned author proceeds to say:

"The constitutional and unconstitutional provisions may even be contained in the same section, and yet be perfectly distinct and separate, so that the first may stand though the last fall. The point is not whether they are contained in the same section, for the distribution into sections is purely artificial, but whether they are essentially and inseparably connected in substance. If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained."

So that if the sections of the ordinance that were objected to were stricken out, sections 1 and 6 would be complete in themselves, and capable of being executed, wholly independent of those sections which were rejected.

Sections 1 and 6 of the ordinance are valid. Section 6 contains the only penal clause in the ordinance, and it refers to every section contained in said ordinance, by providing that a violation of any one section shall be punished in the manner stated in section 6. There is no conflict in the penalties imposed under the ordinance, and there is no confusion.

Section 1 of the ordinance is separate and distinct from the other sections, except section 6. These two sections are separable from the other sections, and they are complete in themselves; the one defining the offense, and the other providing the penalty.

The convictions of defendant must stand. The judgment appealed from is affirmed.