Desmond, J.
(dissenting). This is a mandamus-type (Civ. Prac. Act, art. 78) proceeding brought to require the New York City Commissioner of Licenses to grant a license for a junk yard in a residential neighborhood. The Commissioner, after a hearing, had held that the application should be denied on the ground that the public health, safety and welfare would be unreasonably interfered with because of “ rats, mice, noise, dirt, vermin, and trucks backing in and out of the junk shop, endangering the lives of the numerous children of the neighborhood, which is completely residential except for two places of business.” The courts below granted mandamus, apparently on the ground that there was in the licensing ordinance (Administrative Code of City of New York, §§ B32-113.0 — B32-124.0) no specific grant of authority to deny a junk shop license on such grounds. Actually, the statute states no standards or qualifications at all but it is settled law in New York that in such a situation the administrative officials charged with enforcing the licensing law have a reasonable amount of discretion. “ The requirement that a person must secure leave from some one to entitle him to exercise a right, carries with it, by natural implication, a discretion on the part of the other to refuse to grant it, if, in his judgment, it is improper or otherwise to give the required consent” (People ex rel. Schwab v. Grant, 126 N. Y. 473, 481). “ The Legislature may vest in a licensing officer a measure of discretion in granting or refusing a license ” (Matter of Small v. Moss, 277 N. Y. 501, 507). “ Petitioner does not allege, nor is there any evidence to support a claim, that the standard which has been adopted by appellants is arbitrary or unreasonable. The law is well settled that it is not always necessary that license legislation prescribe a specific rule of action. Where it is difficult or impractical for the Legislature to lay down a definite, comprehensive rule, a reasonable amount of discretion may be delegated to the administrative officials. (New York ex rel. Lieberman v. Van De Carr, 199 U. S. 552, affg. 175 N. Y. 440.) Where the administrative agency has adopted a standard as an interpretation of the broad powers granted to it by the statute, we may declare such a standard invalid only in the event that it is so lacking in reason for its *163 promulgation that it is essentially arbitrary [citing cases].” (Matter of Marburg v. Cole, 286 N. Y. 202, 211-212.)
Therefore, mandamus will issue only when the applicant is absolutely and as matter of law entitled to his license, that is, when the refusal is completely arbitrary. ‘ ‘ Refusal to grant a license is arbitrary only when it is not based on a reasonable exercise of the discretion vested in the licensing officer. The limits of reasonable discretion are transgressed where refusal is based upon a ground which under the statute the licensing officer may not consider or upon a ground that is not supported by any evidence ” (Matter of Small v. Moss, 277 N. Y. 501, 507, supra). This record does not show that respondent Commissioner was guilty of either of those faults.
It is suggested that this petitioner’s rights to a license were somehow established by his having a certificate of occupancy for the premises and by the zoning of the area as ‘ ‘ unrestricted ’ ’. The granting of such a license, however, involves considerations different from those which apply to the zoning of a whole area or to an authorization to occupy a building for a certain purpose. If the zoning map and the certificate of occupancy from another city department established petitioner’s rights to run a junk yard business at this location, there would be no point to having a separate junk yard licensing law. The idea is advanced, also, that the sole purpose of licensing junk yards is to control or prevent dealing in stolen property (see People v. American Wool Stock Corp., 286 N. Y. 77). Presumably that was one of the reasons for this licensing requirement but it does not follow that the Commissioner, with no attention at all to public morals, health or safety, must issue a license to any applicant who is not a proven receiver of stolen property.
The undesirability of having an unsightly junk yard in an otherwise attractive area is well known and has been recognized in similar licensing laws in numerous other States (see, for instance, State v. Kievman, 116 Conn. 458; Lerner v. City of Delavan, 203 Wis. 32; City of Rochester v. Bemel, 181 Minn. 596; City of South Pasadena v. City of San Gabriel, 134 Cal. App. 403, cert, denied 292 U. S. 602). Our own court has gone very much farther as to junk yards. We have held generally valid (Matter of Harbison v. City of Buffalo, 4 N Y 2d 553) a Buffalo ordinance which directed that an existing junk yard, valid under *164 zoning law as a pre-existing nonconforming use, be denied a further license after expiration of a three-year period. This was a court-approved recognition of the peculiarly objectionable and deleterious character of such businesses in residential neighborhoods.
Apart from all this, the grant of mandamus here is directly in conflict-with Matter of Rosenberg v. Moss (296 N. Y. 595). Rosenberg had been denied a bowling alley license. The decision in his case is a square holding that the New York City Licensing Commissioner has power, regardless of zoning or of the absence of specific standards in the statute, to take into account the residential character of the neighborhood and the opposition of residents and community leaders. The Rosenberg case cannot be distinguished from the present one. One of the reasons for requiring that bowling alleys be licensed is to control the attendance of children (see Administrative Code, § B32-46.0), just as one of the reasons for licensing junk yards is to prevent traffic in stolen goods, but in neither case does this motivation forbid the exercise by the Commissioner of reasonable discretion to deny a license on broader grounds.
The order should be reversed and the proceeding dismissed, with costs in all courts.
Judges Dye, Ftjld, Froessel and Van Voorhis concur with Judge Burke; Judge Desmond dissents in an opinion in which Chief Judge Conway concurs.
Order affirmed.